IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**GREGORY S.,**[1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

Civ. No. 6:19-cv-00599-SU

**OPINION & ORDER**

SULLIVAN, Magistrate Judge:

    Plaintiff Gregory S. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. All parties have consented to magistrate judge jurisdiction in this case. ECF No. 10. The decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## BACKGROUND

    On June 19, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. Tr. 58. On September 30, 2015, Plaintiff filed a Title XVI application for supplemental security income. *Id.* Both applications alleged disability beginning on July 10, 2014, although the alleged onset date was later amended to July 19, 2015. *Id.* The claims were denied initially and upon reconsideration. *Id.* At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on January 22, 2018. *Id.* On March 30, 2018,

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

the ALJ issued a decision finding Plaintiff not disabled. Tr. 66. Plaintiff sought review by the Appeals Council and submitted additional evidence in support of his appeal. Tr. 2. On February 13, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant

is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date, June 19, 2015. Tr. 61. The ALJ determined Plaintiff had the following severe impairments: inflammatory arthritis; and left knee synovitis. *Id.* The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 62.

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional restrictions: he can occasionally climb ramps and stairs; he can never climb ladders ropes or scaffolds; he can occasionally kneel, crouch, and crawl; and he can occasionally handle, finger, and feel bilaterally. Tr. 62-63.

Plaintiff was 34 years old on the alleged onset date. Tr. 65. He has at least a high school education and is able to communicate in English. *Id.* The ALJ determined that Plaintiff was unable to perform his past relevant work. *Id.* At step five of the sequential analysis, the ALJ determined that Plaintiff was able to perform work as a sandwich board carrier, an usher, and a call out operator. Tr. 65-66. Accordingly, the ALJ determined Plaintiff was not disabled. Tr. 66.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).

In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly rejecting Plaintiff's subjective symptom testimony; and (2) failing to fully and fairly develop the record and whether new and material evidence demonstrates that the ALJ's decision is not supported by substantial evidence.

### I.   Evidence Submitted to the Appeals Council

As previously noted, Plaintiff submitted evidence to the Appeals Council which was not before the ALJ and urges the Court to consider that evidence in assessing the ALJ's decision. The Ninth Circuit has held that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r*, 682 F.3d 1157, 1162-63 (9th Cir. 2012). "If the new evidence creates a reasonable possibility that it would change the outcome of the ALJ's decision, then

remand is appropriate to allow the ALJ to consider the evidence." *Elizabeth G. v. Comm'r*, 1:19-cv-00054-BR, 2020 WL 252984, at *8 (D. Or. Jan. 16, 2020) (internal quotation marks and citations omitted).

In the present case, Plaintiff submitted a psychological evaluation dated May 9, 2018 from Scott T. Alvord, Psy D. and Plaintiff's treatment notes from the UCHC Roseburg Clinic from February and April of 2018. Tr. 2, 13-33, 34-54. Plaintiff also submitted a "good cause" letter arguing that the new records should be considered. Tr. 362-63. The Appeals Council determined that the February 2018 records from the UCHC Roseburg Clinic "[do] not show a reasonable probability that it would change the outcome of the decision." Tr. 2. The Appeals Council concluded that the records from April 2018 and the May 2018 opinion of Dr. Alvord did not relate to the period at issue and did not "affect the decision about whether you were disabled on or before March 30, 2018." Tr. 2.

Of note, the Commissioner does not argue that this material is not appropriate for consideration by this Court. Def. Br. at 5 (Noting that Plaintiff cited treatment notes submitted for the first time to the Appeals Council and adding that "even should the Court consider the new evidence . . . that evidence does not provide a basis to disturb the ALJ's decision."). ECF No. 16. Because the Appeals Council considered this new evidence in deciding whether to review the ALJ's decision, the Court concludes that the post-hearing evidence is "part of the administrative record," and the Court "must consider [it] in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes*, 682 F.3d at 1159-60. The Court will therefore incorporate the evidence submitted to the Appeals Council in its assessment of the record below.

## II.  Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting his subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

In this case, Plaintiff testified that all the joints in his body hurt, although the pain is most severe in his left knee, which makes it difficult for him to stand or walk. Tr. 96. Plaintiff received steroid injections for his knees, which "helped it a little bit." Tr. 97. Plaintiff testified that he could stand for fifteen minutes before needing a break. *Id.* Plaintiff testified that he could walk for 30 or 40 minutes if he was able to lean on something, like a shopping cart. Tr. 98. Plaintiff testified that he sits or lays down to relieve his symptoms and that, on a "very bad" day, he will

spend most of the day laying down. *Id.* Plaintiff estimated that in an eight-hour day he would spend six or seven hours laying down. Tr. 98-99. Plaintiff estimated that he experiences episodes of severe pain about twice a month and that the episodes last an average of five days and that he spends ten days per month laying down. Tr. 99. Plaintiff testified that his pain has gotten worse since his filing date. *Id.* Plaintiff estimated that if he was able to stop and rest, that he "could probably walk for a couple hours." Tr. 100. Plaintiff also testified that his pain becomes worse if he is active. Tr. 101. Plaintiff testified that if he stands still or sits, it is difficult to resume walking. Tr. 106. Plaintiff also testified that he "definitely can't crawl or kneel, or climb." Tr. 124.

Plaintiff also has pain in his hands and difficulty straightening his fingers. Tr. 97. Plaintiff estimated that he could type on a keyboard for ten minutes before he needed to stop and rest due to pain. Tr. 101. Plaintiff estimated that he could use his hands for up to an hour and a half in an eight-hour workday. Tr. 101-02. Plaintiff also has difficulty writing and estimated that he could write about half a page before needing to stop. Tr. 105. He cannot put on socks, open jars, cook, or use a can opener. *Id.* Plaintiff also testified that he has pain in both elbows and is unable to fully straighten his left elbow. Tr. 106-07.

Plaintiff testified that he has experienced changes in his concentration and social functioning. Tr. 102. Plaintiff also testified that he suffers from depression, which has caused a lack of appetite and weight loss. Tr. 90. Plaintiff testified that he has become more avoidant of social interactions and rarely leaves his house. Tr. 104. Plaintiff testified that he is always exhausted. Tr. 109.

Plaintiff has taken several different medications for rheumatoid arthritis. Tr. 93. Plaintiff testified that one of the side-effects of his medication was a loss of appetite which, combined with depression, caused him to lose fifty pounds. Tr. 90-91. Plaintiff experienced other negative side

effects while trying different medications. Tr. 92-94. Plaintiff testified that he experienced some relief when taking the drug Humira, but that "it sometimes seems like it works a little bit and sometimes it doesn't work," and his physicians want to increase his dosage or possibly switch medications. Tr. 95. Plaintiff testified that "even on Humira I'm still always in pain even not in flare." Tr. 111. Plaintiff also experiences side effects from Humira, including acne and rashes. Tr. 96.

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 63-64.

The ALJ's first reason for discounting Plaintiff's testimony concerns inconsistency with the objective medical evidence. Tr. 64. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161.

Plaintiff's treatment notes from May 2015 show normal gait and station and full strength in Plaintiff's extremities, as well as normal strength and range of motion in Plaintiff's hands and wrists. Tr. 392. The same treatment notes reflect edema and tenderness in Plaintiff's hands. *Id.*

Plaintiff's treatment notes from August 2015 reflect unremarkable gait and good range of motion except for his left hand, which had a decreased range of motion. Tr. 379. Plaintiff's hands and left ankle were tender. *Id.* The medical notes also record that Plaintiff "appears mildly

depressed." *Id.* In October 2015, Plaintiff also had normal posture and gait and normal muscle strength. Tr. 418.

An examination in January 2016 found normal posture and gait with normal muscle strength. Tr. 442. In March 2016, Plaintiff showed unremarkable gait and good range of motion of all joints except his left hand which had a decreased range of motion. Tr. 479. Plaintiff had tenderness in his left and right hands, with swelling in his left hand. *Id.* In a second March 2016 examination, Plaintiff had unremarkable gait and good range of motion all joints except his left hand and Plaintiff had effusion of the left knee. Tr. 471. Examination revealed tenderness of the left and right hands, and the left knee, with swelling in the left knee and left hand. Tr. 472.

In June 2016, Plaintiff was ambulating with a cane and exhibited tenderness and swelling in his right wrist and left hand.[2] Tr. 465. Plaintiff also showed tenderness in his left ankle and swelling in his left knee. *Id.* In July 2016, Plaintiff was ambulating without a cane and the examination revealed a tender area on Plaintiff's right arm, as well as tenderness and swelling in Plaintiff's wrists and hands. Tr. 461. Plaintiff also had tenderness in his left ankle and swelling in both knees. *Id.*

In August 2016, the treatment notes reflect that Plaintiff was once again ambulating with a cane and appeared mildly depressed and agitated. Tr. 456-57. Plaintiff had rheumatoid nodules in his left elbow and right hand and on examination his wrists and hands were found to be tender and swollen. Tr. 457. Plaintiff's left ankle was also tender and there was swelling in both knees. *Id.*

---

[2] With respect to the cane, the ALJ noted that "[t]here is no apparent prescription for an assistive device nor is there any comment from a treating source that this is medically necessary." Tr. 64. However, Plaintiff's treatment notes from June 2016 indicate that Plaintiff was "instructed in proper use of cane," indicating that Plaintiff's providers approved of his use of a cane. Tr. 463.

Page 9 – OPINION & ORDER

In October 2016, the treatment notes record a rheumatoid nodule in Plaintiff's left elbow and left knee effusion. Tr. 453. On examination, Plaintiff had tenderness and swelling in both wrists and both hands. Tr. 453-44. Plaintiff had swelling in both knees, greater in the left knee, and tenderness in the left ankle. Tr. 454. Plaintiff was again ambulating with the assistance of a cane. Tr. 453.

An examination in May 2017 revealed antalgic gait and a bilateral upper limb postural tremor. Tr. 504. In June 2017, Plaintiff was ambulating without a cane, but exhibited a moderate limp. Tr. 530. Plaintiff also exhibited tenderness in his hands and left ankle with swelling in his left knee. Tr. 531. In July 2017, Plaintiff had normal gait and station, but tenderness and reduced range of motion in his left knee. Tr. 565.

In December 2017, Plaintiff again exhibited a moderate limp favoring his right hip and rheumatoid nodules in his left elbow with new flexion contracture. Tr. 610. Plaintiff had decreased range of motion in his left elbow and right hip, with tenderness in his left shoulder, left elbow, both wrists, right hip, both hands, and both ankles, with swelling in his right ankle, both hands, and both wrists. Tr. 610-11.

In February 2018, Plaintiff again exhibited a moderate limp, this time favoring his left knee. Tr. 26. He exhibited tenderness in his left shoulder, left elbow, both wrists, right hip, both hands, his left knee, and both ankles, with swelling in both wrists, both hands, left knee and right ankle. Tr. 27. Plaintiff had decreased range of motion in his left elbow and right hip. *Id.*

Plaintiff's April 2018 medical records also indicate a limp and tenderness in both shoulders, his left elbow, both wrists, his right hip, both hands, his left knee, and both ankles. Tr. 14-15. Plaintiff had a decreased range of motion in his left elbow and right hip and swelling in both wrists, both hands, his left knee, and his right ankle. *Id.*

On this record, the Court cannot conclude that Plaintiff's medical records contradict his subjective symptom testimony. Indeed, the objective medical evidences appears generally consistent with Plaintiff's testimony. As noted, the ALJ may consider whether the medical records fully support pain testimony, but such a finding, standing alone, cannot sustain a negative credibility finding.

The ALJ also considered the efficacy of Plaintiff's medication. Tr. 64. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006). In this case, the ALJ observed that "While earlier use of disease-modifying antirhuematic [sic] drugs were ineffective or caused side effects, use of Humira 'dramatically improved' symptoms including hand swelling, though pain has persisted." Tr. 64. Although there is some evidence that Plaintiff's condition initially improved on Humira, *see e.g.* Tr. 529 (Plaintiff "is tolerating humira injections well," and "The pain and swelling in his hands has dramatically improved."), the more recent treatment notes paint a different picture.

In February 2018, Plaintiff's physician increased Plaintiff's Humira dosage to weekly and referred him to OHSU for evaluation and consideration of a different biologic medication. Tr. 25. This strongly indicates that Humira was no longer effective in controlling Plaintiff's condition. This was confirmed by Plaintiff's treatment notes from April 2018, in which Plaintiff's physician reported that "Pt's disease has NOT responded to humira," and discontinued the drug in favor of a different medication, Xeljanz. Tr. 13. The Court concludes that the ALJ's finding concerning the efficacy of Plaintiff's medication is not supported by substantial evidence in the record.

The Court concludes that the ALJ failed to give sufficient clear and convincing reasons for discounting Plaintiff's subjective symptom testimony and that this error was not harmless.

### III.  Duty to Develop the Record

The ALJ found Plaintiff's mental impairments to be non-severe at step two of the sequential analysis and did not include any functional limitations related to Plaintiff's mental impairments in formulating the RFC.  Tr. 61-62, 63-64.  However, Plaintiff contends that the record before the ALJ was inadequate to determine the nature and severity of Plaintiff's mental impairment and that the ALJ erred by failing to adequately develop the record by ordering a consultative psychological examination of Plaintiff.  In Social Security cases, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even when the claimant is represented by counsel.  *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (internal quotation marks and citation omitted).  The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

"One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, *i.e.*, 'a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request and expense.'"  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) (quoting 20 C.F.R. §§ 404.1519, 416.919).  "[T]he Commissioner has broad latitude in ordering a consultative examination."  *Id.* at 842 (quotation omitted).  Certain kinds of cases "normally require a consultative examination," including cases in which "additionally evidence needed is not contained in the records of [Plaintiff's] medical sources," and cases involving an "ambiguity or insufficiency in the evidence [that] must be resolved."  *Id.* (quoting 20 C.F.R. §§ 404.1519a(b)(1), (4) and 416.919a(b)(1), (4)).

In the present case, Plaintiff requested a consultative examination, citing to evidence in the record supporting the existence of mental impairments. Tr. 356. The ALJ denied the request noting:

> The claimant seldom raised mentally based complaints—he was diagnosed with an adjustment disorder, but framed the issue as being due to "his [physical] symptoms but otherwise he is fine" and he was not interested in any related treatment and has yet to have any such treatment. He later described having only "20 second bouts" of depressive symptoms. Furthermore, his testimony at hearing was equivocal as to whether he felt any mental impairment limited him in work activity. Based on the lack of treatment record, persistent related complaints, or evidence of specific functional limitations stemming from a mental impairment, a consultative examination is not appropriate and the adjustment disorder is nonsevere.

Tr. 58 (internal citations omitted).

After the ALJ denied his request for a consultative examination, Plaintiff sought a psychological evaluation at his own expense. Plaintiff was examined by Dr. Alvord on April 25, 2018. Tr. 34-54. As previously noted, Dr. Alvord's opinion was submitted to the Appeals Council and is part of the complete record in this case.

Dr. Alvord observed a depressed mood, with withdrawn affect and noted transient suicidal ideation. Tr. 36. Dr. Alvord diagnosed recurrent moderate major depressive disorder, somatic symptom disorder, and dependent personality traits. Tr. 38. Dr. Alvord noted that "although physical issues are considered paramount, the fact that psychiatric factors are magnifying said physical issues, is considered a psychiatric factor." *Id.* Although Dr. Alvord examined Plaintiff after the ALJ's decision, he reported "with a good degree of psychological certainty, based on review of records and direct evaluation with [Plaintiff] that his somatic symptom disorder and underlying mood symptoms existed well before March 30, 2018," and that "it is also highly probable that his depressive symptoms existed prior to the aforementioned date." *Id.*

Dr. Alvord also prepared a medical source statement of Plaintiff's ability to do work-related activities.  Tr. 40-43.  Dr. Alvord assessed mild limitations to Plaintiff's ability to understand and remember simple instructions; carry out simple instructions; his ability to make judgments on simple work-related decisions; his ability to understand and remember complex instructions; his ability to carry out complex instructions; and his ability to make judgment on complex work-related decisions.  Tr. 41.  Dr. Alvord assessed moderate limitations to Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers, as well as his ability to respond appropriately to usual work situations and to changes in routine work settings.  *Id.*  Dr. Alvord estimated that the assessed limitations had been in place since January 1, 2017.  Tr. 42.  Dr. Alvord also opined that Plaintiff's ability to maintain attention and concentration for extended periods precluded performance for 10% of a 7.5-hour workday and that his psychiatric symptoms would cause him to be absent two days per month.  Tr. 43.

The Government contends that Dr. Alvord's opinion is generally consistent with the ALJ's determination and does not justify disturbing the ALJ's conclusions.  At the hearing, however, the Vocation Expert ("VE") testified that more than 1.5 absences per month would be disqualifying for unskilled work.  Tr. 121.  As noted above, Dr. Alvord opined that Plaintiff's mental impairments would result in two absences per month.  Tr. 43.  The Court cannot conclude that the ALJ's opinion was consistent with Dr. Alvord's report, even without delving into the other issues identified in Dr. Alvord's opinion.

### IV.    Remedy

For the reasons set forth above, the Court concludes that the ALJ's decision contains harmful errors and must be reversed and remanded.  The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court.

*Triechler v. Comm'r,* 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

On review of the record, the Court concludes that this case is not appropriate for an immediate award of benefits and that the proper resolution is a remand for further proceedings. On remand, the ALJ should:

(1) Assess Plaintiff's subjective symptom testimony and either credit that testimony or give clear and convincing reasons for discounting it; and

(2) Reassess Plaintiff's mental impairments in light of Dr. Alvord's opinion and either credit Dr. Alvord's opinion or give sufficient reasons for discounting it.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

It is so ORDERED and DATED this 4th day of September 2020.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge